JENKS v. COUNTY OF INGHAM.

1. APPEAL AND ERROR—STATUTES—MISCARRIAGE OF JUSTICE.

Statute providing that no judgment or verdict should be set aside or reversed for various types of error occurring in a trial unless it should affirmatively appear that the error complained of resulted in a miscarriage of justice is not a legislative cure-all but was intended to prevent reversal for errors which do not affect the substantial rights of the parties (3 Comp. Laws 1929, § 15518).

2. SAME—REVERSIBLE ERROR.
   Error to be reversible must be prejudicial (3 Comp. Laws 1929, § 15518).

3. NEGLIGENCE—MINORS—IMPUTED NEGLIGENCE—AUTOMOBILES.
   The negligence of the driver of a car in which minor was riding when killed would not be imputable to her.

4. SAME — AUTOMOBILES — DEFECTIVE HIGHWAYS — PRESUMPTION OF DUE CARE—EYEWITNESSES.
   In action against county for death of plaintiff's minor decedent, alleged to have been caused by defective highway, plaintiff *held,* entitled to have jury instructed that unless there were eyewitnesses who could testify with respect to decedent's actions as the car in which she was riding approached an oncoming automobile at the scene of the accident, she is presumed to have been exercising due care.

5. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE.
   Presumption which prevails in absence of testimony to contrary that one accidentally killed was free from contributory negligence is based on common knowledge that one will ordinarily exercise such care as is requisite for his own safety.

6. SAME — EYEWITNESSES — PRESUMPTION OF DUE CARE — INSTRUCTIONS.
   In action against county for death of plaintiff's minor decedent, alleged to have been caused by defective highway, trial court's charge that plaintiff had burden of proof to show deceased was free from contributory negligence *held,* error, where there were no eyewitnesses who could testify as to decedent's actions at time of accident, the presumption of due care on her part obtaining.

7. AUTOMOBILES—SPEED—EVIDENCE—OPINION TESTIMONY OF 15-YEAR OLD BOY.
   Exclusion of testimony of 15-year old boy as to his opinion as to speed of car in which plaintiff's decedent was riding, as car passed him while he was riding on his bicycle at a place about 400 feet from scene of accident alleged to have been caused by defect in highway on last day of November, *held,* error, the weight and credibility of his testimony being for jury.

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 5, 1939. (Docket No. 50, Calendar No. 40,239.) Decided June 5, 1939.

Case by Alfred W. Jenks, administrator of the estate of Genevieve Violet Jenks, against county of Ingham, a municipal corporation, for damages for alleged negligence in the maintenance of a highway causing death of plaintiff's decedent. Verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Paul Younger* (*William C. Brown,* of counsel), for plaintiff.

*Thomas J. Bailey,* Prosecuting Attorney, *Leonard B. Crandall,* Assistant Prosecuting Attorney (*Cummins & Cummins,* of counsel), for defendant.

Bushnell, J. Plaintiff, as administrator of the estate of Genevieve Violet Jenks, deceased, a minor, claims that defendant county of Ingham's negligence in maintaining a highway caused the death of plaintiff's decedent.

At the city limits, where it crosses south Washington avenue, the city asphalt pavement ends and the county concrete pavement begins. Inside the city the pavement is 38 feet wide from curb to curb. The county pavement is but 20 feet wide. The narrowing of the road takes place within a distance of 64½ feet, there being flatiron-shaped strips of concrete at the narrowing part of the road, varying in width from seven feet where the strip touches the asphalt to 1½ feet where the narrowing is accomplished.

The deceased worked at the State police barracks at East Lansing and lived south of the city of Lansing. On the evening of November 30, 1936, about 6 p. m., Clyde Jenks was driving his sister to their home and was proceeding southerly on south Washington avenue. The accident, which resulted in the death of Jenks and his sister, occurred

on the above-described county road approximately 200 feet south of the end of the narrowing process.

It is plaintiff's theory that the proximate cause of the accident was some ruts or holes along the west shoulder of the narrowing strip which caused the Jenks car to swerve into approaching traffic. The gravel shoulder of the road at this point is three or four feet wide. This shoulder was frozen on the morning of November 30th, the official temperature at the weather bureau that day being a maximum of 24 degrees and a minimum of 9. There is considerable dispute as to the condition of the shoulder. Some witnesses testified there were holes in the gravel from 8 to 10 inches deep and 4 or 5 feet long and about 15 to 18 inches wide, while others insisted there were no holes or ruts of any depth greater than 2 or 3 inches.

A car was approaching from the south just before the accident. The driver of this car, Ross Rhodes, testified that he saw a car coming towards him just south of where the pavement narrows and that it swerved across the road to its left. Rhodes slowed down and pulled over to his proper side of the road, the other car then swerved to the right, back to the left again, and sideswiped Rhodes' car. This witness stated that, until the other car began to swerve, there was nothing to attract his attention, and he did not notice the occupants of the Jenks car until after the accident. The headlamps were lighted on both cars.

Merle Spurbeck, a 15-year-old boy, was riding his bicycle southerly on Washington avenue. This witness was not permitted to testify as to the speed of the Jenks car when it passed him about 200 feet north of the city limits line. He paid no further attention to the car and next saw it after the crash, while it was still rolling. Spurbeck did not know

what the driver of the Jenks car was doing at the time of the accident. Witness Ferris was walking at the time in a southerly direction on the east shoulder of the road, with his back to the scene of the accident, and knew nothing about it until he turned around at the sound of the impact just as the two cars "were settling down."

The trial judge declined plaintiff's request to charge the jury as follows:

"Should you find that no person now living saw the actions of the deceased, Genevieve Violet Jenks, at the time of the accident or immediately preceding thereto, you will presume in the absence of evidence to the contrary that the decedent was free from any negligence contributing to her injury, and was in the exercise of due care for her own safety."

The charge of the court in this respect is:

"I have indicated also the burden of proof rests on the plaintiff to show the deceased was free from contributory negligence. It is the duty of any person, under ordinary circumstances, to exercise reasonable and proper outlook for his or her own safety at all times. And that duty, of course, rested on the deceased. I also charge you that by reason of the fact that deceased was a minor at the time of the accident, no negligence on the part of the driver of the car in which she was riding, if any, can be imputed to her. Yet, it is for the jury to consider whether the driver was negligent and if so, whether such negligence was the sole, proximate cause of the accident and consequent injury.

"If you should find that the deceased met her death by reason of the negligence of defendant, the fact the negligence of Clyde Jenks, driver of the car in which she was riding, contributed to the injury, does not relieve the defendant of responsibility."

The jury brought in a verdict for the county, upon which judgment was entered. Plaintiff's motion for new trial was denied and he appeals, alleging error upon the charge and the exclusion of the testimony of the 15-year old boy as to the speed of the Jenks car when it passed him about 400 feet from the point of impact. Defendant argues that the judgment should be affirmed because the jury's verdict was unquestionably based upon the finding that the county was free from negligence. Defendant urges the application of 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618). This statute reads as follows:

"No judgment or verdict shall be set aside or reversed, or a new trial be granted by any court in any civil case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This statutory provision is not a legislative cure-all but was intended, and has been generally applied, to prevent reversal for errors which do not affect the substantial rights of the parties. See *First National Bank of Ann Arbor* v. *Holmes,* 213 Mich. 41, and *Flannigan* v. *Harder,* 268 Mich. 564. Error, to be reversible, must be prejudicial. *Sweeney* v. *Adam Groth Co.,* 269 Mich. 436, and *Zoski* v. *Gaines,* 271 Mich. 1.

Deceased was a minor and the negligence, if any, of the driver of the car was not imputable to her. *Donlin* v. *Detroit United Railway,* 198 Mich. 327. She died as a result of the accident and her administrator was entitled to have the jury instructed that, unless there were eyewitnesses who could testify

with respect to her actions as the car in which she was riding approached the oncoming automobile, she is presumed to have been exercising due care. *Petersen* v. *Lundin,* 236 Mich. 590, *Arndt* v. *Grayewski,* 279 Mich. 224, 230. Though there might be some dispute as to whether or not there were eyewitnesses to the accident itself, no claim is made that any witness was able to testify as to the conduct of Genevieve Jenks.

The court said in *Fairchild* v. *Railway Co.,* 250 Mich. 252, 257:

"Much said in appellant's brief would be of convincing and controlling force if plaintiff's decedent had been the driver of the automobile; but not so of the plaintiff's decedent as a minor occupant of a car driven by another. There is no testimony from which it can be said that plaintiff's decedent did or did not exercise such care as an ordinarily prudent and careful person would have exercised under like circumstances. For aught we know, he may have timely observed the approaching train and warned the driver of the automobile not to attempt to pass in front of it, but that the warning thus given was disregarded. As the invited occupant of an automobile driven by another, he could hardly be required by law to have done more. There were no witnesses who saw or heard anything that would throw light upon this phase of the case. That there were witnesses who saw and heard things which would enlighten us on other phases of this unfortunate accident is not at all helpful on the question of contributory negligence of Virgil Fairchild. The presumption which prevails in the absence of testimony to the contrary that one accidentally killed was not guilty of contributory negligence is based on the common knowledge of mankind that one will ordinarily exercise such care as is requisite for his own safety. No witness in this case was able to give any testimony which tended to sustain a con-

trary conclusion as to plaintiff's decedent. The law presumes that he exercised reasonable care. *Gillett* v. *Michigan United Traction Co.,* 205 Mich. 410. He was a minor, and the law does not impute to him the negligence of which Lawrence Lambert may have been guilty in driving this Ford roadster. See *Michelsen* v. *Railway Co.,* 247 Mich. 383, and cases cited.''

The trial court because of the presumption was in error in charging the jury that the burden of proof rested upon the plaintiff to show that the deceased was free from contributory negligence.

The exclusion of the testimony offered by plaintiff from the 15-year-old boy as to the speed of the Jenks car as it passed him was also erroneous. It may be that the testimony as to speed will have little bearing on the question of plaintiff's decedent's negligence and that its exclusion would not, under the circumstances disclosed by this record, constitute reversible error. Although the court divided on other phases of the case, all concurred in the following statement in *Tyler* v. *Weed,* 285 Mich. 460, 489.

''Plaintiffs sought to show the speed at which defendant was driving at the time of the accident, by Max Ballenger, a boy 14 years of age. This witness testified that he had observed the speedometers in automobiles in which he had ridden and that he could also give an opinion as to how fast defendant was going, based upon his experience in observing automobiles driven on the streets. When he was asked to give his opinion as to the speed of defendant's car at the time of the accident, the court sustained an objection made by defendant's counsel on the ground that the witness had not been qualified to testify to such a fact. This was erroneous. The witness under these circumstances should have been permitted to give an opinion. He was sufficiently

qualified for this purpose; and the weight and credibility of such testimony were for the jury."

See, also, *Stehouwer* v. *Lewis,* 249 Mich. 76, 80 (74 A. L. R. 844). Because of the error in the charge, the judgment entered upon the jury's verdict must be vacated and a new trial granted. It is so ordered, with costs to appellant.

Butzel, C. J., and Wiest, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.